**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA GUZMAN, on her own behalf, and | ) | |
| on behalf of her minor son, | ) | |
| OSCAR O. GUZMAN, and NUBIA GUZMAN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 09 C 7570 |
| v. | ) | |
| CITY OF CHICAGO, et al. | ) | Judge Kocoras |
| | ) | Magistrate Judge Valdez |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

The Independent Police Review Authority ("IPRA"), and certain of its employees, by and through one of their attorneys, Eileen E. Rosen, respond to Plaintiffs' Motion to Compel, and state as follows:

### INTRODUCTION

As a result of Plaintiffs' interaction with police on April 22, 2009, Plaintiff Nubia Guzman made a complaint with the IPRA. The IPRA, which was formerly known as the Office of Professional Standards (OPS), is an independent department of the City of Chicago, which is directly responsible for conducting thorough and independent investigations of police misconduct involving allegations of excessive force, domestic violence, coercion through violence, or verbal-bias based abuse. As a result of Plaintiff Nubia Guzman's complaint, the IPRA opened an investigation into the incident. The investigation, Log #1025740, remains open and pending. Maira Webb is the primary investigator assigned to conduct the investigation into the allegations made by Plaintiff Nubia Guzman. In connection with this litigation, Plaintiffs have, to date, issued deposition notices for four employees of the IPRA who were in some way involved in the investigation of Log

#1025740. On October 26, 2010, Plaintiffs' counsel took the deposition of Investigator Webb. During the course of that deposition, Plaintiffs' counsel asked questions regarding communications between Investigator Webb and other IPRA employees related to deliberations regarding recommended findings, and the basis for those findings, recommended discipline, and the basis for the discipline, and additional avenues of investigation. The undersigned objected to these questions and asserted the "deliberative process privilege," which "'protects communications that are part of the decision-making process of a governmental agency.'" *Evans v. City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (citations omitted.) Following Investigator Webb's deposition, Plaintiffs' counsel sent the undersigned correspondence, attached to Plaintiffs' motion to compel as Ex. A (Dkt. No. 47-1) setting forth Plaintiffs' position that the assertion of the privilege on behalf of the IPRA and/or its employees is improper and asking the undersigned to reconsider her position. After the undersigned confirmed that she would continue to assert the privilege during the depositions of the remaining IPRA employees if the questions asked invaded the privilege, *see* October 27, 2010 e-mail to Plaintiffs' counsel attached hereto as Ex. A, Plaintiffs' counsel cancelled the remaining depositions and filed Plaintiffs' Motion to Compel ("Plaintiffs' Motion").

## ARGUMENT

### I. The Privilege Applies

### A. Federal common law supplies the rules for any privileges asserted in this case

Discovery in civil actions brought in federal courts is governed by the Federal Rules of Civil Procedure. *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). While the standard for discovery under those rules is extremely broad, it is not limitless. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any *nonprivileged* matter that is relevant

to any party's claim or defense....") (emphasis added). Where the principal claim arises under federal law, whether the privilege asserted should be recognized is "'governed by the principles of the common law as they may have been interpreted by the courts of the United States in the light of reason and experience.'" *Memorial Hospital for McHenry County*, 664 F.2d at 1061 (citing Fed. R. Evid. 501). Federal courts can consider the law of the state in which the case arises to determine whether a state law privilege should be recognized as a matter of federal law. *Id.* "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Id.* (citations omitted). This principle does not, however, "permit[] - much less require[] - federal courts to ignore federal common law privileges merely because they have not been recognized in state law." *Evans*, 231 F.R.D. at 316, n. 5.

The deliberative process privilege is one which federal common law recognizes. *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). It protects communications "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental *decisions* and policies are formulated." *Id.* (citations omitted) (emphasis added). This federal common law privilege "rests on the obvious realizations that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of decisions,' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8-9.

The principal claim in this case arises under the Federal Civil Rights Act (42 U.S.C. § 1983). *See* Plaintiffs' First Amended Complaint, ¶ 3 (Dkt. No. 21). Thus federal law, not state law, supplies the rule of decision as to Plaintiffs' claims.

3

## B.     IPRA has established a prima facie case that the deliberative process privilege applies

Plaintiffs are correct that to establish that the privilege applies to the documents or information that the governmental agency seeks to withhold from disclosure, the governmental agency must establish a *prima facie* case that the information is privileged. *Parvati v. City of Oak Forest*, 2010 WL 2836739, at *5 (N.D. Ill. July 19, 2010); *see also Evans*, 231 F.R.D. at 316. Plaintiffs are similarly correct that to establish a *prima facie* case, there are requirements:

> 1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; 2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the [information] in question; and 3) the official must specifically identify and describe the [information].

*Id.*

Plaintiffs argue that the privilege does not apply because a formal claim of privilege was not made by the department head or responsible official. First, it is not clear that the failure to provide an affidavit by the department head is required in every circumstance. *See Tumas v. Bd. of Ed. of Lyons Township H.S. Dist. No. 204, Cook County, Ill.*, 2007 WL 2228695, at *2 (N.D. Ill. July 31, 2007). Second, even if an affidavit is required, as the undersigned indicated in Court, the IPRA has always been willing to provide the affidavit. The issue did not come up until the deposition of Inv. Webb on October 26, 2010, when Plaintiffs' counsel first asked questions that invaded the privilege. In support of this response, the IPRA now attaches the affidavit of Ilana B. R. Rosenzweig, Chief

4

Administrator of IPRA.[1]  *See* Affidavit of Ilana B. R. Rosenzweig ("Affidavit"), attached hereto as Ex. B.  As the Chief Administrator of IPRA, Chief Rosenzweig is the department head responsible for the department's operation and performance of its investigation, including the investigation of a complaint under Log # 1025740, which is the underlying complaint associated with this lawsuit. Affidavit at ¶ 3.  Chief Rosenzweig is thus the department head with ultimate control.

In this case, Chief Rosenzweig is personally aware that conversations have taken place between Inv. Webb, the primary investigator assigned to this investigation, and her supervisors, specifically Supervisor Kevin Connolly, Coordinator William Weeden and herself.  Affidavit at ¶ 6. She is further aware that Inv. Webb has already sat for her deposition and that during that deposition Inv. Webb was asked questions related to her conversations with Supervisor Connolly, Coordinator Weeden and herself.  Affidavit at ¶ 6. Chief Rosenzweig is also personally aware that many of the questions asked sought information regarding recommended findings, and the basis for those findings, recommended discipline, and the basis for the discipline, and deliberations regarding additional avenues of investigation.  Affidavit at ¶ 6.  Chief Rosenzweig is additionally aware that these questions were objected to during Inv. Webb's deposition based upon the deliberative process privilege and that Inv. Webb, upon the advise of counsel, refused to answer the questions based upon the assertion of the deliberative process privilege.  Affidavit at ¶ 6.

---

[1]  To the extent Plaintiffs argue in their reply that it is too late to provide the affidavit *see Parvati*, 2010 WL 2836739, at *5, a case upon which Plaintiffs rely, wherein the court allowed the City to remedy its failure.  *See also Tumas*, 2007 WL 2228695, at *2 (Complete failure to provide affidavit from department head not fatal to claim of privilege because court could understand from the pleadings the nature of the information the governmental agency claimed was privileged as well as the reasons it sought to protect the information.)

As Chief Rosenzweig explains in the Affidavit, the disclosure of the pre-decisional deliberations of IPRA investigators is a potential threat to the integrity of IPRA investigations. Affidavit at ¶ 5. During the pendency of an investigation, IPRA investigators and supervisors discuss recommended findings, and the basis for those findings, recommended discipline, and the basis for the discipline, and additional avenues of investigation. Affidavit at ¶ 5. The disclosure of these pre-decisional deliberations could threaten the integrity of IPRA investigations because compelling IPRA investigators and supervisors to disclose their pre-decisional deliberations would chill the open and frank discussion that is necessary to ensure thorough and independent investigations. Affidavit at ¶ 5. Specifically, investigators and supervisors may be less likely to express their opinions if they knew that those pre-decisional discussions could be made a part of the public record, thereby inhibiting the free flow of ideas necessary to conduct thorough and independent investigations. Affidavit at ¶ 5. Accordingly, to protect the integrity of the investigations and to promote frank discussions between investigators and/or their supervisors, pre-decisional deliberations must remain confidential, particularly when, as here, IPRA is ordered to produce, in civil litigation, open investigations. Affidavit ¶ 5.

After personal consideration of the information sought here, Chief Rosenzweig articulated the precise and certain reasons that exist for preserving the confidentiality of the information sought. Specifically, Chief Rosenzweig concluded that to compel Inv. Webb, or anyone else, to disclose the content of these discussions would inhibit the free flow of ideas, jeopardizing the integrity of this investigation. Affidavit at ¶ 7. She further concluded that the future deliberations that are certain to take place before this investigation is complete will be inhibited if Inv. Webb and the other IPRA witnesses know that they will be questioned at deposition by Plaintiffs' counsel, the accused officer's

6

counsel and the witness officers' counsel about these deliberations. Affidavit at ¶ 7. Finally, Chief Rosenzweig concluded that compelling Inv. Webb and the others to testify about both past and future deliberations will jeopardize the integrity of this investigation. Affidavit at ¶ 7.

The reasons articulated by Chief Rosenzweig as set forth in her Affidavit are precisely those articulated in the case law. The purpose of the privilege is "to enhance the quality of agency decisions by protecting open and frank discussions among those who make them within the Government." *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, 239 F.R.D. 508, 514-15 (N.D. Ill. 2006) (citations omitted). The privilege extends to "pre-decisional communications" on the theory that "if communications such as these were exposed the candor of government staff would be tempered with a concern for appearances to the detriment of the decisionmaking process." *Id.* at 515 (citations omitted). Accordingly, the IPRA has established a *prima facie* case that the information sought is privileged.

## C. The deliberative process privilege applies to municipal agencies, including IPRA

Plaintiffs also argue that IPRA is not entitled to assert the privilege. In their brief, Plaintiffs argue that the privilege does not apply to the IPRA because "[t]here are no 'policy' matters at issue in or around the Guzman IPRA investigation" and "IPRA is not a policy-making body." *See* Plaintiffs' Motion at p. 6. When this Court, at the hearing on Plaintiffs' motion, expressed its view that Plaintiffs' view of "policy" in this context was too narrow, Plaintiffs' argument shifted. Orally, Plaintiffs' counsel argued, citing *Allen v. Chicago Transit Authority*, 198 F.R.D. 495 (N.D. Ill. 2001) that the privilege does not apply to the IPRA because it is a municipal agency. The IPRA will address each of these arguments.

First, this Court was correct when it stated that Plaintiffs' view of "policy" in this context was to narrow. The Supreme Court has summarized the scope and rationale of the privilege as follows:

> The cases uniformly rest on the policy of protecting the "decision making process of government agencies" and focus on documents "reflecting advisory opinions, recommendations, and deliberations comprising of a process by which governmental *decisions* and policies are formulated."...
>
> Manifestly, the ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency *decisions*.

*NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150-151 (1975) (citations omitted) (emphasis added). Thus, the privilege applies to governmental agency communications that "lead[] up to the formulation of an official position," *U.S. v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004), no matter how broad or narrow. In fact, the privilege is often applied in cases where discrete governmental agency decisions are at issue. *See U.S. v. Zingsheim*, 384 F.3d 867 (court determined that the privilege applied to prosecutor's internal deliberations regarding case by case decisions to file downward departure motion to reward substantial assistance); *Jones v. City of Indianapolis*, 216 F.R.D 440 (S.D.Ind. 2003) (court determined that privilege protected documents compiled by police conducting internal homicide investigation); *Gomez v. City of Nashua, New Hampshire*, 126 F.R.D. 432 (D.N.H. 1989) (court determined that the privilege protected the Attorney General's decision not to prosecute a particular case). Accordingly, the deliberative process privilege applies even where the decision is discrete.[2]

---

[2] Plaintiffs' argument that IPRA is not a policy-making body is equally unavailing. While the privilege would apply regardless, Plaintiffs's argument is simply wrong. *See* Municipal Code of Chicago, ch. 2-57-040 (2007)**,** a copy of the Ordinance is attached hereto as Ex. C, (among the powers conferred to the chief administrator is the power "[t]o make recommendations to the superintendent, the police board, and the chairman of the city council committee on police and fire concerning revisions in policy...")

Second, Plaintiffs' argument that the privilege does not apply to municipal agencies, including IPRA, is equally unavailing. This argument, raised for the first time orally at the hearing on Plaintiffs' Motion, is apparently derived from *Allen*, 198 F.R.D. 495. Simply put, Plaintiffs' reliance upon *Allen* is misplaced. Several courts have specifically held that the privilege applies to state and municipal agencies. *See, e.g. Bobkoski v. Board of Ed.*, 141 F.R.D. 88, 92 (N.D.Ill. 1992); *Moorhead v. Lane*, 125 F.R.D. 680, 686 (C.D. Ill. 1989). Importantly, several courts since *Allen* have applied the privilege to state or municipal agencies. *See, e.g. Tumas*, 2007 WL 2228695, at *5 (analyzing *Allen* and concluding that the privilege applied to a municipal agency); *Lawrence E. Jaffe Pension Plan*, 239 F.R.D. at 514-17 (analyzing the privilege as applied to nine state agencies); *Evans*, 231 F.R.D. at 317-19 (analyzing the privilege with respect to the Illinois Governor's office and the Illinois Prisoner Review Board). *See also*, *Jones*, 216 F.R.D 440 (court applied privilege to municipal law enforcement agency). In fact, after careful consideration, the court in *Tumas* concluded that the court in *Allen* did not specifically hold that the deliberative process privilege was unavailable to municipal agencies.[3] *Tumas,* 2007 WL 2228695, at *5.

### D. The privilege has not been waived

Plaintiffs argue that even if the privilege is applicable, it has been waived. This argument rests upon two grounds. First, Plaintiffs claim that the production of the "entire investigatory file, including all 'decision-making' reflected therein" constitutes waiver. Plaintiffs' Motion at 6. The

---

[3] To the extent that *Allen* can be read to hold that the deliberative process privilege is unavailable to municipal agencies, that decision rests on the Illinois Supreme Court's holding in *People ex re. Birkett v. City of Chicago*, 184 Ill.2d 521 (1998). While the *Birkett* Court did not recognize the deliberative process privilege under Illinois law, as discussed above, federal law governs the decision here.

deliberative process privilege "only protects expressions of opinion or recommendations; it does not protect purely factual material." *Bobkoski*, 141 F.R.D. at 91. The investigatory file here, Log #1025740, contains numerous documents, including police reports, photographs, videotapes, statements of Plaintiffs, witnesses (civilian, police and other municipal employees) and the accused officer. All of these documents constitute "purely factual material" to which the privilege does not apply. Moreover, none of these documents reflect "decision-making." They simply reflect the accumulation of information that will ultimately provide the basis for whatever decision is ultimately reached in this investigation. By contrast, the discussions about the information as it relates to recommended findings, recommended discipline, and/or additional avenues of investigation is not "purely factual." It is those discussions which deserve protection here. Thus, the production of "purely factual material" does not constitute a waiver.

The only other document contained within the investigatory file is the summary report. The summary report is prepared by the IPRA investigator and reflects a post decision proclamation of the decision and the basis for it. In this case, Inv. Webb completed her investigation and prepared the summary report. Upon its completion, Inv. Webb submitted the report to her supervisor. After review, the supervisor returned the file to Inv. Webb for more investigation. This additional investigation is currently ongoing.[4] The summary report is akin to the recommendation memorandum at issue in *Evans*, 231 F.R.D. at 318-19. The *Evans* memorandum contained a recommendation by then Governor Ryan to then Deputy Governor Tusk regarding clemency petitions that included the plaintiff's petition in that case. *Id.* The court concluded that "the

---

[4] Inv. Webb testified to this sequence of event during her deposition. Plaintiffs did not order the deposition. The IPRA will order the deposition if this Court determines that it is necessary.

10

Recommendation reflects a post-decision proclamation of what the decision was, and what it was based on." *Id.* at 19 (citations omitted). Thus, despite the fact that in this particular case, the investigation was sent back to Inv. Webb for additional investigation after the preparation of the summary report, the report itself is akin to the *Evans* Recommendation and its production does not constitute a waiver.

Similarly, the testimony of Inv. Soto, the other IPRA investigator referred to in Plaintiffs' Motion, did not constitute a waiver. While Plaintiffs are correct that the privilege was not asserted during Inv. Soto's deposition, they are incorrect when they claim that questions were asked "related to the 'decision-making' aspects of the investigation." Plaintiffs' Motion at 7. Inv. Soto was asked many questions regarding his involvement in the investigation. The questions were limited to the early stages of the investigation and involved only the interviewing of certain members of the Guzman family because that was the extent of his involvement in the investigation. There were no questions regarding "deliberations" which would have been protected by the privilege.

### E. Plaintiffs have not shown a particularized need

Plaintiffs argue that the privilege is overcome because Plaintiff have a "particularized need" for the discovery. According to Plaintiffs, their "particularized need" exists because a) the IPRA has performed an "extensive investigation" that is "directly focused on uncovering what happened on the day of the incident in question and b) Plaintiffs have alleged a *Monell* claim focused on the IPRA's possible role in contributing to misconduct throughout the police department. Plaintiffs' Motion at 7.

In balancing the need for disclosure against the need for confidentiality, the court looks at factors such as:

> 1) the relevance of the documents to the litigation; 2) the availability of other evidence that would serve the same purpose as the documents sought; 3) the government's role in the litigation; 4) the seriousness of the litigation and the issues involved in it; and 5) the degree to which disclosure ... would hinder frank and independent discussion about governmental policies and decisions.

*Tumas*, 2007 WL 2228695, at \*5-6 (citations omitted). The limited information Plaintiffs seek is not relevant to any of Plaintiffs' claims. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even under this liberal definition of "relevant evidence," the deliberations by and among IPRA investigators related to their recommended findings, recommended discipline, and/or additional avenues of investigation in connection with their *after the fact* investigation into the allegations of misconduct made by Plaintiff Nubia Guzman is not relevant to any of the claims alleged in Plaintiffs' First Amended Complaint. *See* Plaintiffs' First Amended Complaint (Dkt. No. 21). The content of the conversations related to recommended findings, recommended discipline, and/or additional avenues of investigation related to an investigation that began *after* the incident which forms the basis of Plaintiffs' Complaint will not aid in the determination of whether any of the Defendant Officers' actions constituted excessive force, false arrest, or a failure to intervene. *See* Plaintiffs' First Amended Complaint, Counts I, II, and III (Dkt. No. 21). Similarly, the content of these conversations will not aid in the determination of whether the City of Chicago policies are the moving force behind this alleged misconduct because it fails to train, supervise and control its officers. *See* Plaintiffs' First Amended Complaint, ¶ 52 (Dkt. No. 21). While Plaintiffs have made allegations in their Complaint that are directed at the length of time the IPRA investigation has been ongoing, "compounding the damage done," again the content of conversations related to

12

recommended findings, recommended discipline, and/or additional avenues of investigation will not make more or less probable Plaintiffs' claim that the investigation has taken too long. Thus the first factor weighs heavily in favor of upholding the privilege.

As for the remaining factors, the IPRA concedes that the limited information protected by the privilege is unavailable from other sources and that Plaintiffs' Complaint makes allegations against the IPRA. Additionally, while Plaintiffs' claims are serious, they are no more so than numerous other Section 1983 lawsuits filed against municipalities and their police officers. Finally, with respect to the final factor, "the degree to which disclosure ... would hinder frank and independent discussion about governmental policies and decisions," as discussed in great detail above, the disclosure would hinder frank and independent discussions between IPRA investigators. Thus this final factor weighs heavily in favor of upholding the privilege.

WHEREFORE, for the reasons set forth above, the Independent Police Review Authority, and certain IPRA employees, respectfully request that this Court deny Plaintiffs' Motion to Compel its entirety.

Dated: November 23, 2010     Respectfully submitted,

          By:  /s/ Eileen E. Rosen
            One of the Attorneys for IPRA


Eileen E. Rosen
ROCK FUSCO, LLC
321 North Clark Street, Suite 2200
Chicago, Illinois 60654
(312) 494-1000